I, JONES, Judge.
The City of New Orleans (City) appeals the judgment of the trial court finding Officer Charles Noullet of the New Orleans Police Department was acting within the course and scope of his employment when the appel-lees, Leslie Russell and Danneel Miller, were injured on August 16, 1992. The City further appeals the general damages awarded to the Appellees in this matter.

FACTS

Officer Charles Noullet was a New Orleans Police Department officer assigned to the Burglary Section. He regularly worked Monday-Friday 4:00 p.m. till Midnight. On Saturday, August 16, 1987, Officer Noullet was off-duty. On that night at or around 11:00 p.m., he left the home of his girlfriend with her two-year old daughter and drove to 7800 Breakwater Drive, commonly referred to as the “boat launch.” He was looking to “hang out” with his brothers, Wade and Keith Noullet, and expected to find them there drinking alcohol. Before meeting with his brothers, Officer Noullet stopped at a Canal Villere store and bought a six-pack of beer to consume while he was at the boat launch. The boat launch was an area frequented by á number of young people in cars, most of whom were Rdrinkmg alcohol. Upon his arrival, Officer Noullet located his brothers, and found that, as expected, they were drinking. All three testified to having finished at least two beers before the altercation began.
The parties dispute how the altercation started. However, it appears from the record and the testimony of Ms. Kelly Price that Wade Noullet made some sexually suggestive comments to Ms. Price, and she responded by making an obscene gesture to Wade Noul-let. At that point, a beer can was thrown at the pickup truck carrying Ms. Price. Between five and twenty men who had accompanied Ms. Price • confronted Wade Noullet and began to assault him. Officer Charles Noullet intervened and attempted to break up the altercation by announcing that he was a police officer. The crowd dispersed for a moment, but later resumed their assault against Wade and Keith Noullet.
Wade Noullet, a New Orleans' Police Department recruit, retrieved his gun and fired several shots in the air to disperse the crowd; the gunfire did not strike anyone. Once the shots were fired, the crowd began to back away and Wade and Keith Noullet jumped into a yellow Dodge and drove away. Ms. Danneel Miller testified that when the shots were fired, she was writing down the license plate number to a blue Chevrolet Iroc-Z belopging to Officer Noullet. When she informed Officer Noullet that she was going to give the license plate number to the police, he grabbed her by her head and pushed her into the car. Officer Noullet denies grabbing or striking Ms. Miller. Both Ms. Miller and her friend, Ms. Price, testified that at no time was Ms. Miller involved in the fight nor was she doing anything that any reasonable person or police officer would consider criminal activity prior to the alleged beating.
After the altercation with Ms. Miller, Officer Noullet got into his car in an attempt to leave and drive his girlfriend’s baby daughter to safety, but the crowd grabbed him and attempted to pull him out of the car. Officer Noullet testified | -¡that he then pulled out his gun to defend himself, and upon seeing the gun, the crowd which had surrounded him began to back away from the car while others stood behind his vehicle in an attempt to attack Officer Noullet from the rear.
Meanwhile, Leslie Lee Russell, who was not involved in the actual fight, watched the incident from behind a dumpster when he heard the first gunshots fired by Wade Noullet. Mr. Russell further testified that after Wade’s departure, the crowd began to calm down and he came out from behind the dumpster. He noticed his friend, Ms. Price, standing in the crowd, and he attempted to pull her away from the- crowd that had surrounded Officer Noullet. When he approached Ms. Price, Officer Noullet randomly fired his gun into the crowd as he attempted to leave. Mr. Russell testified *543 that he suddenly felt a burning, pulling sensation in his inner right thigh as a result of being struck by one of Officer Noullet’s stray bullets.
Mr. Russell sustained injuries requiring emergency surgery to repair the femoral artery in his right leg. He was hospitalized for eight days and subsequently underwent á regime of physical rehabilitation. He became addicted to pain killing drugs and alcohol. At trial, he testified that he had intermittent leg pain, problems sleeping, was unable to participate in sports and his leg continued to be sensitive to hot water. For those injuries, the trial court awarded Mr. Russell general damages in the amount of $200,000.
Ms. Miller was treated for post traumatic concussion syndrome, headaches, cervical spine injury and chronic vomiting. She continued to complain of severe headaches, depression and cervical problems on the date of trial. After the trial court rendered judgment against the City, it awarded Ms. Miller $100,000 in general damages.
I ¿ASSIGNMENT OF ERROR NO. 1
Did the trial court err in holding that Charles Noullet was acting within his course and scope of employment when the tortious act occurred?
The City argues that Officer Noullet was officially off-duty, at a place away from work, and was not promoting any function for his employer at the time he injured plaintiffs. The City also argues that the place where the incident occurred was a place of drinking and recreation, and that Officer Noullet, in the City’s view, was prohibited by New Orleans Police Department regulations from carrying a firearm while off-duty, especially when engaged in the consumption of alcohol. Moreover, the fact that he was armed and had announced that he was a police officer was immaterial when considering that Officer Noullet did not observe any criminal activity taking place prior to the shooting. Further, that Officer Noullet acted as a private person during the altercation at the boat launch and because the New Orleans Police Department had not assigned him to this location to engage in any police function, the City is not liable for the injuries sustained by the appellees.
Mr. Russell and Ms. Miller argue that a police officer is obligated to respond to any and all situations of conflict that may come to their attention. The fact that this incident took place outside of Officer Noullet’s regular work hours was irrelevant in determining vicarious liability. While Officer Noullet was not instructed to investigate this incident by his employer; he was required to intervene and take action once the disturbance had occurred. They further argue that police officers are required to take necessary and appropriate police action on any serious matter coming to their attention, and failure to do so was considered neglect of duty. Further, that given the amount of authority and power held by police officers and the amount of exposure they have to violent crimes, police officers are permitted to carry their firearms even while off-duty. Moreover, they argue, the | sfact that an officer becomes negligent in his attempt to carry out his duties does not relieve his employer of liability and does not deny the plaintiffs the right to recovery. We agree.
The trial court’s determination that a particular act is within the course and scope of employment is a factual finding governed by the manifest error/clearly wrong standard of review. Samuels v. Southern Baptist Hospital, 594 So.2d 571, 574 (La.App. 4 Cir.), writ denied, 599 So.2d 316 (La.1992). The application of this standard of review mandates that an appellate court can only reverse a lower court’s factual findings when (1) the appellate court finds from the record that there is no reasonable factual basis for the finding of the trial court, and .(2) the appellate court further determines that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
Vicarious liability is based on La. Civ.Code art. 2320, which states that “masters and employees are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in *544 which they are employed.” Under this article, liability extends only to- the employee’s tortious conduct that is within the course and scope of the employment. Orgeron v. McDonald, 93-1353 (La.7/5/94); 639 So.2d 224, 226. As a general rule, the determinative question is whether the employee’s tortious conduct was so closely connected in time, place and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employee’s business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer’s interest. LeBrane v. Lewis, 292 So.2d 216 (La.1974).
Considering the principles of vicarious liability outlined above, it cannot be said that the trial court had no reasonable basis for concluding that Officer Noullet |gwas acting within the scope of his employment at the time the tortious injuries were inflicted. At the time the incident occurred, Officer Noul-let was off-duty, and the place where the incident happened was at a location where a large number of young people were gathered and drinking. As a New Orleans Police officer, Officer Noullet was obligated to respond to the altercation in a manner conducive to being a police officer. Therefore, his actions in trying to quiet the disturbance was proper although the reaction by the crowd following his attempt was unexpected.
In fact, the New Orleans Police Department Operations Manual, Rule 4 Subsection 8 states, in part:
The fact that members [of the police force] may be technically off-duty shall not relieve them from the responsibility of taking the required police action on any serious police matter coming to their attention at any time. (Emphasis added)
Officer Noullet denies being on a personal mission when attempting to intervene to gain control of the disturbance and we ascertain his actions would fall under the rubric of this rule. However, we cannot support the premise that a police officer, in an effort to flee an unruly crowd and protect himself is without fault when randomly shooting into a crowd of people.
Lieutenant Aschebroch, a veteran of the New Orleans Police Department for twenty-seven years, testified that an officer is re--quired to use his weapon if the officer or someone else’s life is in imminent danger, and their decision to use their weapon is not hampered by whether or not they are in uniform. He cannot abandon his duty as a police officer when he witnesses a crime or altercation taking place.
Additionally, the regulations in the police manual coupled with Lieutenant Ashebroch’s testimony indicates that Officer Noullet’s use of deadly force on innocent bystanders was against police procedure. In fact, the Operations Manual pfor the New Orleans Police Department under the heading Use of Deadly Force provides under the general guidelines the following information:
4. Drawing or Exhibiting Firearms:
Unnecessarily or prematurely drawing or exhibiting a firearm limits an officers alternatives in controlling a situation, creates unnecessary anxiety on the part of citizens, and may result in an unwarranted or accidental discharge of the firearm.(Emphasis added)
5. Application of Force:
An officer should exercise extreme caution with respect to use of deadly force. In all cases, only the minimum degree of force which is necessary shall be used, and every other available alternative shall be exhausted before deadly force is applied. (Emphasis added)
We conclude that the trial court’s determination that Officer Noullet was acting within the course and scope of his employment when the tortious act occurred was within its discretion and the finding of liability is affirmed.

ASSIGNMENT OF ERROR NO. 2

Did the trial court abuse its discretion in its awarding of damages?
The City argues that the trial court abused its discretion by awarding Mr. Russell $200,-000 and Ms. Miller $100,000 in general damages.
As it relates to Mr. Russell, the City contends that the award of $200,000 was excessive based on the duration of Mr. Russell’s *545 treatment, the length of his disability and the amount of present and future medical expenses. To support its argument, the City looked to a prior award made by this Court in Kyle v. City of New Orleans, et al., 357 So.2d 1389 (La.App. 4th Cir.1978), whereby the plaintiff received an award of $25,000 for a fracture of his lower femur and damages to his femoral artery.
The City also complains that Ms. Miller’s award was excessive because she did not sustain any broken bones, fractures or serious injuries; The City also Rlooked to prior awards for similar injuries from our brethren in the Second and Third Circuit Courts as proof of excessiveness.
The trier of fact is accorded much discretion in fixing general damage awards. The discretion in the trier of fact is great, even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under particular circumstances that the appellate court should increase or decrease the award. Id. at 1261. However, before a damage award may be set aside, the reviewing court must look first, not to prior awards, but to individual circumstances of the instant matter before it. Warren v. Campagna, 96-0834 (La.App. 4 Cir. 12/27/96); 686 So.2d 969, 981. Only after an analysis of the facts and circumstances particular to the case at hand can a reviewing court determine if the award is an abuse of the trial court’s discretion. Id.

Leslie Lee Russell’s Damage Award

Mr. Russell was shot in the right inner thigh, underwent surgery to repair his femoral artery and he remained hospitalized for eight days. Mr. Russell testified he still experiences pain with his leg approximately ten years after this incident. His leg is also sensitive to hot water and it occasionally creates sleeplessness. He also complains that he is embarrassed by the 18-inch scar on his leg. The trial court also considered the testimony by Mr. Russell concerning his later addiction to pain killers and alcohol as a result of this injury.
Mr. Russell’s stepfather, Mr. Robert Cour-et, and his mother, Mrs. Roselyn Couret, both testified regarding the effect that the injury has had on Mr. Russell’s |9life. Mr. Couret testified that his step-son was heavily involved in baseball prior to the accident and that he was even selected to travel to Australia as a member of the United States baseball team. Mr.' Couret further stated that Mr. Russell had plans to attend college and play baseball. Unfortunately, after the accident, these plans were not followed through and Mr. Russell’s general attitude deteriorated.
In Emoakemeh v. Southern University, 94-1194 (La.App. 1 Cir. 4/7/95); 654 So.2d 474, the injured party'was a student attending Southern University as a highly recruited tennis player. One day, the plaintiff was walking through the dorms without wearing a shirt in violation of dorm rules. The resident assistant on duty confronted the plaintiff and an argument ensued. Following the initial confrontation, the resident assistant retrieved a gun and again confronted the plaintiff. During the altercation which ensued, the resident assistant accidentally shot the plaintiff in the thigh. While the facts are silent as to the severity of the wound, the plaintiffs tennis abilities drastically diminished- as a result of his injury. In finding that the resident assistant was acting within his scope of employment, the appellate court upheld the general damage award of $56,000, and the appellate court also declined to find an abuse of the trial court’s discretion because they could not conclude that the award was “contrary to right reason.” Id. at 479.
We also find that the trial court did not abuse its vast discretion in the award of damages in this case, and we affirm the trial court’s general damage award in the amount of $200,000 for Mr. Russell.

Danneel Miller’s Damage Award

Ms. Miller was awarded $100,000 in general damages by the trial court. The *546 testimony at trial reveals that Ms. Miller had a number of injuries that either resulted from this incident or were aggravated by the altercation with Officer Noullet, which included: a concussion, post concussion syndrome, cervical |10musculoigamentous strain, severe and chronic headaches resulting from the injury to her ear, personality problems, visual problems, numbness in her arms, ringing in her ears, partial loss of hearing in he? left ear, injury to spine muscles, injury to tendons and ligaments, nervous shock and chronic vomiting. She testified that she suffers from depression, nausea, and constant headaches as a result of the her injury.
However, the record reflects that Ms. Miller was suffering from depression,, nausea and constant headaches prior to the incident at the boat launch. Ms. Miller’s psychiatrist, Dr. Robert L. Newman, Jr., testified by deposition that Ms. Miller had been suffering from depression and low self-esteem prior to this incident. He further testified that Ms. Miller had a history of suffering from migraine headaches as a child. Because some of the injuries were pre-existing, we must look to the evidence presented at trial to determine causation.
In her statement to the police immediately following the incident, Ms. Miller stated that she ran up to Officer Noullet, screamed in his face, and Officer Noullet grabbed her head and pushed her into a car. Officer Noullet admitted at trial that he talked to a lady near his car who was writing down his license plate number, but he denies striking her head against the trunk of his car. However, the police report did note a shoving incident. At trial, Ms. Miller claimed that she was groggy and was not of a clear mind when she gave this statement. Furthermore,.Ms. Miller alleges that she attempted to make changes to the statement in pencil but that these corrections were not noted.
The record is clear that Ms. Miller suffered from migraine headaches and depression before the accident. Moreover, the report from Dr. Newman stated that the injury sustained by Ms. Miller on August 16, 1987, caused her to not only suffer from severe headaches, but she also suffers from a loss of her peripheral vision and pain in the back of her head. From his examinations, Dr. New-manjndetermined that Ms. Miller exhibited a dependent personality and a fear of rejection which has escalated since childhood. This behavior has also interfered with her career pursuits.
In view of the record, we cannot say that the trial court’s general damage award was an abuse of discretion given Ms. Miller’s extensive medical history and her recollection of the incident. While other cases cited depict similar injuries to those suffered by Ms. Miller, each case is factually unique resulting in a large disparity in awards. See e.g., Classic Imports, Inc. v. Singleton, 97-0242 (La.App. 4 Cir. 11/12/97); 702 So.2d 1187 (awarding the injured party suffering from post concussion syndrome $232,854); Stegall v. State Farm Mutual Automobile Insur. Co., 29,986 (La.App. 2 Cir. 10/29/97); 702 So.2d 66 (awarding plaintiff suffering from post concussion syndrome $7,500 in general damages).
The general damages award given for post concussion syndrome is a reflection of the trial court’s findings of fact, credibility of the witnesses and the weight to be placed on the evidence admitted in trial. Because of the conflicting testimony given by the witnesses in this action, we will not disturb the trial court’s findings.
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluation and inferences are as reasonable. Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96); 666 So.2d 1073.
[[Image here]]
Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong... .Stroik v. Ponseti, 96-0842, 96-1500 (La.App. 4 Cir. 11/6/96) [683 So.2d 1342]
Though there may be a dispute in what actually occurred, it is the duty of the trial court to discern credibility by the demeanor of witnesses, and we cannot assume 112such a responsibility by relying on what has been *547 reduced to -writing. Therefore, we will affirm the general award made to Ms..Miller in the amount of $100,000.

DECREE

For the foregoing reasons, the judgment of the trial court is affirmed with respect to all issues raised on appeal..

AFFIRMED.

BYRNES, J., concurs.