721 So.2d 868 (1998)
Leslie RUSSELL, et al.
v.
Charles NOULLET, Jr., et al.
Juanita Slack Miller, Wife of/and Frederick C. MILLER, Jr., et al.
v.
Charles NOULLET, Jr., et al.
No. 98-C-0816
Supreme Court of Louisiana.
December 1, 1998.
Rehearing Denied January 15, 1999.
*870 Franz L. Zibilich, Annabelle H. Walker, Avis Marie Russell, New Orleans, for Applicant.
Angela C. Imbornone, New Orleans, Anthony J. Russo, Stockton, Clarence F. Favret, III, New Orleans, Jacob J. Amato, Jr., Gretna, Stephen R. Rue, Kenner, for Respondent.
Thomas A. Usry, Craig E. Frosch, Metairie, for amicus curiae Louisiana Sheriff's Association.
Gerald J. Nielsen, Metairie, for amici curiae Louisiana Municipal Association, and Louisiana Association of Chiefs of Police.
LEMMON, Justice.[*]
We granted certiorari to determine whether Charles Noullet, an off-duty New Orleans policeman, was in the course and scope of his employment, so as to render the City vicariously liable for his actions, when he caused separate injuries to the two plaintiffs in these consolidated cases. Applying the LeBrane[1] factors, as we did in Roberts v. Benoit, 605 So.2d 1032 (La.1991), we determine that the City is not liable under the facts and circumstances established by the evidence in this case.
Facts
About 11:00 p.m. on Saturday, August 16, 1987, Officer Charles Noullet, a New Orleans policeman who was off-duty at the time,[2] joined his brothers Wade and Keith at a popular area on the City's lakefront known as "the boat launch." Officer Noullet, who brought beer to the meeting place, was carrying his authorized weapon in his waistband under his shirt, but was not in uniform.
A very large group of young people had gathered at the boat launch in cars, and consumption of alcohol was widespread. As were the others, Officer Noullet and his brothers were there purely for social activities. During the evening, the brothers consumed several beers.
At some point, Wade Noullet, who was then a City police recruit, wandered off from the area of his brother's car to an area about twenty or thirty feet away. A fight erupted between Wade Noullet and several men, allegedly over a remark made by Wade Noullet to a young woman in the group. As the fight continued and a crowd gathered, Officer Noullet walked over to the area and announced that he was a police officer. Wade Noullet, on the ground and greatly outnumbered, got up and fired his gun into the air. After two sets of two shots, according to Wade Noullet, the crowd "backed up enough where I could get in the car and leave," and he seized the opportunity and drove away with his brother Keith.
Officer Noullet then returned to his car, where he saw plaintiff Danneel Miller standing behind his vehicle, writing down the license number. According to Miller, Officer Noullet addressed her as "bitch" and demanded to know what she was doing; she informed him that she intended to give the license number to the police; Officer Noullet retorted, "I am the police;" and he grabbed her by her throat and neck and slammed her into the back of his vehicle, causing cervical spine injury.[3]
The events thereafter produced conflicting testimony by the witnesses at trial. Nevertheless, the evidence clearly established that a menacing crowd gathered behind Officer Noullet's car after his assault on Miller and that he entered his car with the intention of *871 fleeing the scene. Several persons attempted to pull him out of the open window, and others made threatening remarks. Officer Noullet then drew his gun and fired several shots into the crowd. One bullet struck plaintiff Leslie Russell, who had watched the altercation involving Wade Noullet while hiding behind a dumpster, but had come out when the crowd calmed down after the shots fired by Wade Noullet.[4]
Miller and Russell filed separate actions against the Noullet brothers and the City of New Orleans as Officer Noullet's employer. Following a bench trial, the trial judge rendered judgment against the City, the only remaining defendant,[5] expressly concluding (without reciting the facts underlying the conclusion) that Officer Noullet was acting in the course and scope of his employment.
The court of appeal affirmed. 97-0085 (La.App. 4 Cir. 1/14/98); 706 So.2d 540. Applying the manifest error standard of review, the court concluded that the trial judge had not abused his discretion in finding that Officer Noullet was acting in the course and scope of his employment when the tortious acts occurred. The court of appeal noted that Officer Noullet, as a policeman, "was obligated to respond to the altercation in a manner conducive to being a police officer" and that "his actions in trying to quiet the disturbance was proper although the reaction by the crowd following his attempt was unexpected." 706 So.2d at 544. One judge "reluctantly" concurred out of deference to the factfinder, but voiced concern that the holding exposes the City to liability when "almost any private wrongdoing by an off-duty policeman would arguably violate some public duty."
We granted certiorari to examine the vicarious liability issue. 98-0816 (La.5/15/98, 719 So.2d 59).

Vicarious Liability in General
The principle of vicarious liability is codified in La. Civ.Code art. 2320, which provides that an employer is liable for the tortious acts of its employees "in the exercise of the functions in which they are employed." While the course of employment test refers to time and place, the scope of employment test examines the employment-related risk of injury. Baumeister v. Plunkett, 95-2270 (La.5/21/96); 673 So.2d 994, 996, citing Benoit v. Capitol Mfg. Co., 617 So.2d 477, 479 (La.1993). The inquiry requires the trier of fact to determine whether the employee's tortious conduct was "so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974).[6]
The question of whether an employee's tortious conduct was sufficiently employment-related that the court should impose vicarious liability upon the employer is a mixed question of fact and law, and the trial court's resolution of that question is entitled to great deference on review by the court of appeal under the manifest error standard. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98); 708 So.2d 362. Nevertheless, the reviewing court must determine that the record contains sufficient support in the evidence, viewed in the light most favorable to the party that prevailed in the trial court, for a rational trier of fact to have found that the tortious conduct was or was not employment-related. The reviewing court can only reverse *872 a lower court's factual findings when (1) the record reflects that a reasonable factual basis does not exist for the finding of the trial court and (2) the record establishes that the finding is clearly wrong. Baumeister, 673 So.2d at 998.

Vicarious Liability in the Present Case
As to the factors weighing against vicarious liability, the pertinent conduct by Officer Noullet did not occur during regular working hours, or at his regular place of employment, or while he was wearing a uniform. Moreover, Officer Noullet was carrying his authorized weapon, the instrument that caused injury to one plaintiff, while consuming alcoholic beverages, which clearly violated Department rules.
On the other hand, Officer Noullet, upon observing the nearby fight, was duty-bound under Department rules to take appropriate and necessary police action in an attempt to keep the peace. When he approached the scene of the encounter with the apparent intent to restore the peace, he announced that he was a police officer. The critical inquiry involves Officer Noullet's general conduct thereafter, considered along with his specific tortious acts. Roberts v. Benoit, 605 So.2d 1032, 1041 (La.1991).
If Officer Noullet had, as he related in his rejected version of the events, simply ignored Miller's copying his license number and entered his car in order to retreat from the pursuing mob after Wade Noullet left the scene, the record arguably might support the trial judge's finding of vicarious liability. However, under the version of events implicitly accepted by the trier of fact, Officer Noullet did not ignore Miller, and the encounter with her militates heavily against a finding that he remained in the course and scope of employment when he assaulted her or when he fired into the crowd as he attempted to leave the scene after assaulting Miller.
We therefore proceed to examine separately each of the tortious acts that occurred after Officer Noullet made arguably employment-related efforts to quell the disturbance and after Wade Noullet left the scene during a lull in the activities caused by his firing two sets of shots into the air.

Assault on Danneel Miller
Even if Officer Noullet was acting as a police officer when he attempted to break up the fight involving his brother, he clearly was not acting in that capacity when he assaulted Miller. The tortious assault on Miller clearly was motivated by Officer Noullet's purely personal considerations, entirely extraneous to the City's interests in keeping the peace.
Although only a few minutes elapsed between Wade Noullet's departure and the events which culminated in Miller's injuries, we must examine this temporal element in light of Officer Noullet's general conduct and specific tortious acts. The fracas had subsided after Wade Noullet fired shots into the air and left the scene. When Officer Noullet returned to his automobile unhindered by the crowd, he simply could have left the scene. However, he chose to remain at the scene and to confront and assault Miller. Even under Officer Noullet's version, Miller did not provoke him, and her innocent conduct was not illegal or threatening in any manner.
Clearly, Officer Noullet's attack on Miller was not in any manner employment-related. Neither was this conduct in any manner related to Officer Noullet's previous effort to restore the peace. Officer Noullet's purpose was not to compel Miller to comply with a valid police order or to protect anyone from harm by Miller;[7] rather, his purpose was purely personal and motivated by a desire to harm Miller, apparently because she had announced her intent to report his brother's fight. Most significantly, this assault, whatever the motivation, was totally unrelated to his duties as a police officer.
We thus conclude Officer Noullet was acting outside of the course and scope of his employment when he assaulted Miller.[8]

*873 Shooting of Russell

Every conceivable discharge of a gun in possession of an off-duty law enforcement officer will not be found to be within the scope of employment. Roberts, 605 So.2d at 1038. Even when the law enforcement officer is required to be armed at all times, the departmental employer will not always be held liable. Id.
Officer Noullet admitted that the Department rules gave him the option of carrying a firearm when off-duty; that he could discharge his weapon only if he was in imminent danger of death or great bodily harm; and that he was forbidden to fire warning shots or to fire into a crowd. However, he claimed that he fired his gun into the crowd because he was in fear of being killed by the unruly mob.
The crowd was pursuing Officer Noullet at the time, not because of his intervention into his brother's fight under arguable color of police authority, but because of his physical beating of an innocent bystander that was totally unrelated to his duties as a policeman. On this record, Officer Noullet's fear of injury by the crowd, however reasonable, was brought on by a forseeable reaction to his attack on Miller and not by a reaction to his efforts to restore peace in the earlier fight.
We conclude that Officer Noullet's shooting into the crowd to protect himself from the pursuing mob was not proved to be sufficiently related, for purposes of establishing vicarious liability, to his earlier effort under police authority to restore peace, which was Officer Noullet's only arguable police-related activity in this record. Therefore, considering Officer Noullet's general activities and his specific tortious acts, we conclude that the conduct was not "in the exercise of the functions in which [he was] employed." La. Civ.Code art. 2320.

Other Off-Duty Policeman Decisions
The decision in Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979), does not suggest a different result. In that case, an off-duty police officer shot and killed an unarmed civilian who had intervened in an altercation between the two off-duty officers and a young boy after the youngster made a "nuisance" of himself. Id. at 375 n. 7. The City judicially confessed that the police officers were acting in the course and scope of their employment when the tortious conduct occurred, and the City was precluded from asserting a contrary position on appeal. Id. at 375. The gratuitous statement that the evidence more likely than not established that the police officers' conduct was in the course and scope of their employment clearly was dicta. Id. at 375 n. 7.
Significantly, Cheatham is factually distinguishable from the case before us. Unlike Officer Noullet, the two off-duty officers in that case did not initiate the sequence of events that culminated in the tortious conduct. Instead, the officers were attempting to quell a disturbance created by the youngster when the plaintiffs' decedent intervened on the boy's behalf. We also noted that the officers were required to carry their guns, while Officer Noullet, although permitted to carry his gun while off-duty, violated express Department rules by carrying his gun while consuming alcohol.
Our holding today is consistent with our recent ruling in Roberts v. Benoit, 605 So.2d 1032 (La.1991). There, the sheriff hired Benoit as a cook and later commissioned him as a deputy sheriff to make him eligible for supplemental pay, but his duties remained those of a cook. While at the plaintiff's house having his automobile repaired by the plaintiff, Benoit became intoxicated and was playing with his revolver when it discharged and injured the plaintiff. The plaintiff asserted, inter alia, that the sheriff was vicariously liable for his injuries. Applying the LeBrane and Ermert[9] tests, we held that Benoit was "unquestionably acting outside the scope of his employment at the time of the tragic accident." Roberts, 605 So.2d at 1041. We noted that the "time" and "place" *874 of the accident were far removed from the sheriff's kitchen, explaining:
The "causation" or motive for Benoit's presence at the plaintiff's home was purely personal and unrelated to his employment duties.... Neither his general activities nor his specific activity which caused the harm, horseplaying with the gun, had any connection with the furtherance of his employer's business. Serving a function of the sheriff's office did not actuate Benoit to any appreciable extent. Benoit's activitiesplaying with a loaded revolver while intoxicatedwere in violation of one of Sheriff Foti's written regulations. Moreover,... Sheriff Foti had no regulation requiring Benoit to carry a gun while on or off duty.... [W]e find that Benoit was not exercising any function for which he was employed....
Id. (emphasis added).
Similarly, the conduct here at issue occurred during off-duty hours and at a place intended for purely social pursuits. Like Benoit, Officer Noullet's motivation for his general activities was purely personal. Moreover, the specific activity which caused the harm to Miller was not in furtherance of his employer's interest, and his shooting into the crowd for self-protection was a response to a situation brought on by personal conduct rather than by the exercise of police authority.

Decree
For the foregoing reasons, the judgments of the lower courts are reversed, and judgment is rendered dismissing the consolidated actions against the City of New Orleans.
JOHNSON, J., dissents.
JOHNSON, Justice, dissenting.
The facts of this case are closely akin to Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979). In Cheatham, two off-duty police officers were walking through the French Quarter in street clothes. They were drinking and socializing when they encountered a young shoe-shine boy. The decedent, Cheatham, protested the way the boy was handled by the officers and was shot by one of them when he intervened on the boy's behalf.
Here, as there, we have an off-duty police officer in street clothes, drinking and socializing with friends when he is involved in an altercation. In Cheatham, there was never any suggestion that the officers were not acting within the course and scope of their employment when Cheatham was shot. In a footnote, this court suggested that, although for procedural reasons it was unnecessary to resolve the issue of course and scope of employment, the evidence in the record established that the officers' conduct was in the course of scope of employment for the following reasons:
(1) the officers were required, by police regulation, to carry their guns with them even when they were off-duty; (2) police regulations also required off-duty officers to quell any disturbances occurring in their presence; (3) it was considered a breach of duty under police regulations for an offduty officer not to quell a disturbance; (4) a disturbance of the peace indeed had occurred, with the shoe-shine boy making a nuisance of himself; (5) the officers, although off-duty, were attempting to quell the disturbance created by the shoe-shine boy, as required by police regulations, when Cheatham intervened; (6) the use of excessive force by a policeman while in the course of doing his duty does not put the officer outside the course and scope of his employment.
Cheatham v. City of New Orleans, 378 So.2d 369, 375, n. 7 (La.1979), citing, Kyle v. City of New Orleans, 353 So.2d 969 (La.1977); Taylor v. City of Baton Rouge, 233 So.2d 325 (La.App. 1st Cir.1970).
In the case sub judice, a disturbance of the peace had occurred involving Officer Noullet's brother, Wade Noullet, who made an inappropriate remark to a young woman. The young woman's friends took offense and a fight erupted. Officer Noullet, although off-duty, attempted to quell the disturbance involving his brother as required by New Orleans Police Department Rules. Ms. Miller, another friend of the young woman, wrote down the license plate number of Officer Noullet's car. She apparently was not *875 pleased with the way Officer Noullet handled the fight involving his brother and she intervened in the disturbance. Ms. Miller's act of writing down the license plate number in response to Officer Noullet's handling of the situation is analogous to Mr. Cheatham's protesting the officers' handling of the young shoe-shine boy. Ms. Miller's intervention, albeit, not an illegal or threatening intervention, was an intervention nonetheless. The officers in Cheatham responded to Mr. Cheatham's intervention in an excessively forceful physical manner, just as Officer Noullet responded to Ms. Miller's intervention. Officer Noullet's use of excessive force while in the course of doing his duty does not put him outside the course and scope of employment.
The same crowd Officer Noullet had earlier attempted to disperse in accordance with police rules was gathered around his vehicle and attempting to prevent him from leaving the scene when the shots were fired and plaintiff, Leslie Russell, was injured. Officer Noullet, while not required to, was permitted to carry his gun while off-duty. Permitting an off-duty officer to carry his weapon, as opposed to requiring him to, should not limit the city's vicarious liability.
For the aforementioned reasons, I would affirm the judgments of the Trial Court and the Court of Appeal, and I respectfully dissent.
NOTES
[*] Calogero, C.J., not on panel. Rule IV, Part 2, § 3.
[1] LeBrane v. Lewis, 292 So.2d 216 (La.1974).
[2] Officer Noullet regularly worked in the burglary section from 4:00 p.m. to midnight, Monday through Friday.
[3] Officer Noullet admitted that Miller was behind his car copying his license number, that she said she was going to call the police, and that he said, "I am the police." However, he asserted that he merely ordered her to get her foot off his car, which she did "after a few minutes." Although Officer Noullet denied any assault on Miller, two witnesses corroborated her account. Officer Noullet's denial of the assault on Miller was implicitly rejected by the trial judge, who awarded Miller a substantial amount of damages for the injuries caused by Officer Noullet's physical beating.
[4] Russell testified that "[t]he fight sort of submerged a little bit because of the gun," that the fight "sort of broke up at this point," and that "everyone realized with the gun going off they had to break up the scene."
[5] Officer Noullet filed for bankruptcy, and the trial court dismissed the claims against him. At the conclusion of the evidence, the trial court also granted Wade Noullet's motion for directed verdict, which was unopposed.
[6] The LeBrane factors inquire into:

(1) whether the tortious act was primarily employment rooted;
(2) whether the violence was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
LeBrane, 292 So.2d at 218.
[7] The Department Operations Manual provides that police officers may use reasonable force to compel obedience to a valid police order or to protect persons or property from illegal harm.
[8] We do not base this conclusion on Officer Noullet's obviously excessive use of force against Miller, in violation of the Department rules, but rather we reach this conclusion irrespective of the use of such unauthorized force. See Cheatham v. City of New Orleans, 378 So.2d 369, 375 n. 7 (La.1979), citing Kyle v. City of New Orleans, 353 So.2d 969 (La.1977).
[9] Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990).