J.C. AND J.C. ON BEHALF OF THE MINOR CHILD N.C.[1]

VERSUS

ST. BERNARD PARISH SCHOOL BOARD AND DAVID KIMBERLY

\* NO. 2021-CA-0111

\* 

\* COURT OF APPEAL

\* 

\* FOURTH CIRCUIT

\* 

STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 17-1384, DIVISION "A"
Honorable Robert J. Klees, Judge Pro Tempore
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Regina Bartholomew-Woods, Judge Paula A. Brown)

Harold E. Weiser
WEISER LAW FIRM, LLC
3801 Canal Street, Suite 205
New Orleans, LA 70119

Ilijana Todorovic
Andy Dupre
THE DUPRE LAW FIRM, LLC
705 Constantinople Street
New Orleans, LA 70115

      COUNSEL FOR PLAINTIFF/APPELLANT

D. Scott Rainwater
Claire E. Sauls
TAYLOR, WELLONS, POLITZ & DUHE, APLC
4041 Essen Lane, Suite 500
Baton Rouge, LA 70809

      COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**

**FEBRUARY 04, 2022**

---

[1] *See* note 2, *infra.*

*JCL*
*RBW*
*PAB*

Plaintiff/Appellant, J.C., [2] individually and on behalf of her minor child N.C., appeals the district court's judgment granting the motion for summary judgment filed by Defendant/Appellee, St. Bernard Parish School Board ("School Board"), and dismissing all of J.C.'s claims against the School Board. J.C. also appeals the district court's judgment denying her motion for a new trial. For the reasons that follow, we reverse the judgment granting the motion for summary judgment and remand this matter to the district court for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

During the 2013-2014 school year, N.C. was a fifth-grade student at a public elementary school in St. Bernard Parish, Lacoste Elementary School. David Kimberly ("Kimberly") was his special education teacher. During the school year, Kimberly obtained J.C.'s permission to take N.C. on weekend outings, including taking N.C. mini-golfing, to the zoo, and to the park. In Kimberly's responses to J.C.'s first set of interrogatories, Kimberly stated he took N.C. on these outings

---

[2] Certain parties will be referred to by their initials to protect the minor child's identity. *See I.F. v. Administrators of the Tulane Educational Fund,* 13-0696, p. 3 n. 1 (La.App. 4 Cir. 12/23/13), 131 So.3d 491, 494 (where this Court noted that "because of the sensitive nature of the facts of this case, we have chosen to use some witnesses' and parties' initials in lieu of their names . . .").

because N.C. "made the honor roll for the first time, had been selected as 'Terrific Kid,' and student of the month, as well as meeting all of his goals."

Kimberly engaged in other activities with N.C. that were without J.C.'s prior knowledge or consent. J.C. testified in her deposition that she brought N.C. to school early one day so that he could work on a project for the robotics club. She described Kimberly's positon with the robots club as "sponsor" or "coach." When J.C. picked N.C. up from school that afternoon, N.C. told her that "[Kimberly] had [taken] him off the school property to go eat breakfast at IHOP." No one accompanied Kimberly and N.C. on this outing. J.C. testified she did not report the unauthorized trip to IHOP because she "trusted the school [and] trusted this teacher with [her] child." According to N.C.'s therapy notes, N.C. stated Kimberly "kissed [him] on the head one time, …asked him a couple of times to wear diapers…[once] while they were having lunch at school and once while in the park," and "volunteered to change the diapers of the students at school."

In or about October of 2014, J.C. and N.C. moved to Tennessee for reasons unrelated to this litigation. Prior to the move, Kimberly set up a special email account for N.C. In an email to N.C., Kimberly wrote: "From now on you can use this email address for me. Don't forget to sign out when you are done!" In another email to N.C., Kimberly wrote: "I really want to talk to you sometime when you are alone. I have some things to show you and I want you to show me somethings."

In December 2016, J.C. accessed N.C.'s email on his tablet and discovered several recent emails from Kimberly containing pictures of "training pull-ups, potty seats that had been used and not clean, guys at bars, bottles." In a March 27, 2017 therapy session, N.C. stated "Mr. Kimberly sent him pictures of soiled diapers to the email he set up for him." Additionally, N.C. stated "Mr. Kimberly

offered to travel to [Tennessee], obtain a hotel room and have [N.C.] stay with him."

J.C. filed suit against Kimberly and the School Board on October 26, 2017. The petition for damages included negligence claims against the School Board, including negligent hiring and supervision.

The School Board filed a motion for summary judgment on March 24, 2020 requesting the district court dismiss J.C.'s claims against the School Board. The School Board asserted that Kimberly's actions were not reasonably foreseeable and therefore it "[could] not be found negligent and [could] not be held liable" for Kimberly's inappropriate conduct. In support of its motion, the School Board submitted the petition, the deposition of J.C., the affidavit of Paul Granberry, the Supervisor of Personnel for the School Board, the affidavit of Doris Voitier, the Superintendent for St. Bernard Parish public schools, and the School Board's Second Supplemental Answers to Plaintiff's Interrogatories and Requests for Documents.

The affidavits of Paul Granberry and Doris Voitier stated, *inter alia*, that (1) "[p]rior to employing Kimberly, the School Board had a background check conducted on Kimberly, which revealed no prior criminal history," (2) "[p]rior to employing Kimberly, [Paul Granberry] reviewed his employment application, which denied previous terminations or disciplinary infractions at his work at other schools,"[3] (3) "[p]rior to employing Kimberly, the School Board had no knowledge of any prior criminal history or disciplinary complaints involving Kimberly [and] had no knowledge of any information that would suggest Kimberly had a propensity to exhibit inappropriate behavior towards students, or minors in

_____
[3] This fact is not contained in Doris Voitier's affidavit.

3

general," (4) "N.C.'s curriculum did not call for any weekend activities," and (5) "[t]he School Board had no knowledge of Kimberly meeting with N.C. outside of the regular class schedule." In its Response to Interrogatory No. 2, the School Board stated "[it] had no knowledge of the alleged incidents described . . . in Plaintiffs' Petition until contacted by . . . the St. Bernard Parish Sheriff's Department on January 5, 2017."

J.C. filed an opposition to the School Board's motion for summary judgment. J.C. argued that the School Board's motion for summary judgment addressed "only the *negligence*-based concept of foreseeability – a concept that controls only the plaintiff's claims for negligent hiring and supervision by the School Board" and failed to address vicarious liability and that Kimberly's tortious conduct was reasonably foreseeable under the case law governing vicarious liability.[4]

The School Board filed a reply. In its reply, the School Board argued that the petition pled negligence claims only against the School Board and did not plead vicarious liability, that direct negligence claims and vicarious liability claims against an employer are mutually exclusive, and that the School Board could not be held liable as a matter of law under either negligence or vicarious liability principles for Kimberly's tortious actions.[5]

---

[4] J.C. further argued that the motion for summary judgment was premature since only one deposition, that of J.C., had been taken, documents relating to Kimberly's employment requested from the School Board had not been turned over, and written discovery propounded to Kimberly remained unanswered, which was the subject of discovery motions filed against Kimberly set for hearing on September 10, 2020.

[5] Further, in response to J.C.'s argument that the summary judgment motion was premature, the School Board argued that J.C. had been afforded a reasonable opportunity for adequate discovery in the two plus years that had passed since the institution of the lawsuit.

4

J.C. filed a sur-reply. J.C. argued that under Louisiana's system of fact pleading, a plaintiff need not plead the "theory" of his case in the petition and may recover under any legal theory justified by the facts alleged in the petition. J.C. asserted that the facts pled in her petition were sufficient to put the School Board on notice of J.C.'s vicarious liability claim.

J.C. further argued in her sur-reply that this Court has not adopted the mutually exclusive rule cited by the School Board, which precludes a plaintiff from simultaneously maintaining direct negligence and vicarious liability claims against an employer for an employee's tortious conduct, and, in fact, has held an employer liable on both negligence and vicarious liability claims for damages caused by an employee. *See Harrington v. Louisiana State Bd. of Elementary & Secondary Educ.*, 97-1670 (La. App. 4 Cir. 5/20/98), 714 So.2d 845. Further, J.C. maintained that, even if this Court were to adopt such a rule, the rule does not prohibit recovery against an employer for both negligence and vicarious liability claims where the plaintiff alleges an intentional tort by the employee or, where the plaintiff alleges negligence by the employee, the employer does not stipulate that the employee acted in the course and scope of employment. Finally, J.C. argued that, under the prevailing case law, the School Board could be held vicariously liable for Kimberly's tortious conduct.

The district court granted the School Board's motion for summary judgment after conducting a hearing on September 10, 2020, and on September 21, 2020, the court signed a judgment granting the motion and dismissing all of J.C.'s claims against the School Board, with prejudice.

J.C. filed a motion for new trial on September 29, 2020, arguing that the granting of summary judgment was clearly contrary to the law and that newly

5

discovered evidence, namely, Kimberly's forthcoming discovery responses,[6] provided additional support for J.C.'s opposition to the School Board's motion for summary judgment. At the hearing on the motion for new trial conducted on October 22, 2020, J.C. introduced a copy of Kimberly's written discovery responses, which Kimberly had emailed to J.C. the night before. The district court denied the motion for new trial. A judgment denying the motion for new trial was signed on November 4, 2020. This appeal followed.

## DISCUSSION

In this appeal, J.C. sets forth a single assignment of error, contending that the district court erred as a matter of law in granting summary judgment in favor of the School Board and denying a new trial.

**Preliminary Matters**

The pivotal issue raised on appeal is whether the district court committed legal error in granting the School Board's motion for summary judgment, particularly with respect to claims of vicarious liability. Prior to addressing this issue, we discuss two critical preliminary matters. First, we address whether vicarious liability on the part of the School Board was pled in the petition. The School Board argues that the petition pled claims against the School Board based on negligence only, while J.C. argues that the facts alleged in the petition were sufficient to put the School Board on notice of J.C.'s vicarious liability claim. Second, if we find the Petition pled vicarious liability, we address whether J.C.

---

[6] Immediately after the hearing on the School Board's motion for summary judgment on September 10, 2020, the district court took up the motion J.C. had filed against Kimberly to compel discovery and to have requests for admission of fact deemed admitted. During the course of the hearing, Kimberly agreed to provide discovery responses within thirty days of the hearing.

may maintain both negligence claims and vicarious liability claims against the School Board.

La. C.C.P. art. 891 requires a petition to "contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation ..." "Under the system of fact pleading established by La. Code Civ. Proc. Ann. art. 891 and other codal articles, plaintiffs are not required to specifically label a claim or special defense as such.... Plaintiffs should be awarded any recovery allowable under any legal theory justified by the facts the plaintiff has alleged in his or her petition." *Greemon v. City of Bossier City*, 10-2828, p. 13 (La. 7/1/11), 65 So.3d 1263, 1271 n. 7 (citation omitted). "[T]he 'theory of the case' doctrine, under which a party must select a theory of his case or defense and adhere to it throughout the litigation, has been abolished." *Brown v. Adolph*, 96-1257, p. 6 (La. App. 1 Cir. 3/27/97), 691 So.2d 1321, 1325 (citing *Cox v. W.M. Heroman & Co., Inc.*, 298 So.2d 848, 855 (La. 1974)). "The defendant is not prejudiced if the petition fairly informs the defendant of the nature of the plaintiff's claims and the plaintiff acts consistently therewith." *Id.* (citing *First South Production Credit Ass'n v. Georgia-Pacific*, 585 So.2d 545, 548-49 (La. 1991); *Brewhouse, Ltd. v. New Orleans Public Service, Inc.*, 614 So.2d 118, 125 (La. App. 4th Cir. 1993)).

In the case *sub judice*, the petition alleges that "the cause of action arises out of the ongoing inappropriate behavior by David Kimberly towards minor N.C. occurring at Lacoste Elementary School located in St. Bernard Parish," "David Kimberly was employed by the St. Bernard Parish School Board as a teacher at Lacoste Elementary at the time the minor N.C. was enrolled in Lacoste Elementary," "Mr. Kimberly was a special needs teacher at Lacoste Elementary

School with the minor child, N.C., in his class in 2014," and that Kimberly's inappropriate conduct with N.C. started while Kimberly was N.C.'s special needs teacher. In its answer, the School Board pled that "it has no vicarious liability for the criminal acts allegedly committed by David Kimberly." Further, in its sur-reply brief in support of its motion for summary judgment, the School Board argued that it could not be held vicariously liable for Kimberly's intentional acts and sought the dismissal of all J.C.'s claims against it, including any vicarious liability claim.

The facts included in the petition were more than sufficient to put the School Board on notice that vicarious liability was at issue. The School Board's defense would have been the same in any event, and the School Board can show no prejudice. Accordingly, we find that the petition presented a vicarious liability claim against the School Board.[7]

Defendant argues that "it is well-settled that direct negligence claims and vicarious liability claims against an employer are mutually exclusive" and therefore, "[J.C.] cannot be permitted to pursue both [negligence and vicarious liability] claims against the School Board." *Dennis v. Collins*, No. CV 15-2410, 2016 WL 6637973 (W.D. La. Nov. 9, 2016), cited by the School Board, is the seminal case on this point of law. In *Dennis*, the court stated as follows:

> A plaintiff *may* simultaneously maintain independent causes of action in tort against both an employee and an employer for the same incident when:
>
> (1) the plaintiff alleges both
>
> (a) an *intentional* tort by the employee and

---

[7] Notably, in *Dennis*, No. CV 15-2410, 2016 WL 6637973, at *5 (W.D. La. Nov. 9, 2016), the court noted that "'vicarious liability' is not a cause of action, but rather a method of holding one party liable for the conduct of another, of which *respondeat superior* is merely a species."

8

> > (b) negligent hiring, training, and/or supervision by the employer; or
>
> > (2) the plaintiff alleges both
>
> > (a) negligence by the employee and
>
> > (b) negligent hiring, training, and/or supervision by the employer; and
>
> > (c) the employer does not stipulate that the employee acted in the course and scope of employment.
>
> Conversely, a plaintiff *may not* simultaneously maintain independent causes of action in tort against both an employee and an employer for the same incident when the plaintiff alleges both
>
> > (a) negligence by the employee and
>
> > (b) negligent hiring, training, and/or supervision by the employer; and
>
> > (c) the employer stipulates that the employee acted in the course and scope of employment.

*Id.,* No. CV 15-2410, 2016 WL 6637973, at *6-7 (emphasis in original; footnotes omitted).[8]

---

[8] Most federal courts that have addressed this issue have agreed with *Dennis* that claims for negligent hiring, training, or supervising against an employer are encompassed within a vicarious liability claim against the employer when the employer stipulates that the employee was in the course and scope of employment. *See, e.g.*, *Wilcox v. Harco Int'l Ins.*, No. CV 16-187-SDD-EWD, 2017 WL 2772088, at *3 (M.D. La. June 26, 2017) (dismissing independent negligence claims against an employer based on *Dennis* where it was undisputed that the employee was acting in the course and scope of his employment with the employer at the time of the accident); *Rivera v. Robinson*, No. CV 18-14005, 2020 WL 5658899, at *4 (E.D. La. Sept. 23, 2020) ("[W]hen the employer has stipulated to vicarious liability for the employee's negligent act, plaintiffs may not simultaneously maintain a cause of action for respondeat superior liability and for direct negligence (negligent entrustment) against an employee."); *Marcello v. Holland*, No. CV 19-14609, 2020 WL 5960684, at *3 (E.D. La. Oct. 8, 2020) ("Because Plaintiff has asserted negligence claims against . . . the employee, as well as direct negligence and vicarious liability claims against . . . the employer, and [the employer] has admitted that [the employee] 'was acting in the course and scope of his employment' . . . Plaintiff's direct negligence claims against [the employer] must be dismissed."); *Meadors v. D'Agostino*, No. CV 18-01007, 2020 WL 1529367, at *3 (M.D. La. Mar. 30, 2020) ("[W]hen an employer stipulates to course and scope, the plaintiff cannot also maintain a direct negligence claim against the employer."); *Pigott v. Heath*, CV 18-9438, 2020 WL 564958, at *3-4 (E.D. La. Feb. 5, 2020); *Zinamon v. STR Transport, Inc.*, CV 19-656, 2021 WL 725801, at *3-6 (M.D. La. Feb. 24, 2021). However, in *Gordon v. Great*

In the case *sub judice*, J.C. has alleged an intentional tort by Kimberly. Additionally, the School Board has not admitted Kimberly was acting in the course and scope of his employment. Accordingly, *Dennis* does not bar J.C. from pursuing both negligence and vicarious liability claims against the School Board.[9]

**Motion for Summary Judgment**

We apply a *de novo* standard of review in examining a trial court's ruling on summary judgment. *Hare v. Paleo Data, Inc.*, 11-1034, p. 9 (La. App. 4 Cir. 4/4/12), 89 So.3d 380, 387. Accordingly, we use the same criteria that govern a trial court's consideration of whether summary judgment is appropriate. *Id.*

"In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor." *Hines v. Garrett,* 04-0806, p. 1 (La. 6/25/04), 876 So.2d 764, 765. "A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Id.* (citation omitted). "A genuine issue is one as to which

---

*W. Casualty Co.*, No. 2:18-CV-00967, 2020 WL 3472634, at *2-5 (W.D. La. June 25, 2020), the court "reconsider[ed] its endorsement" of *Dennis* and held that the plaintiff's direct negligence claims against the employer were not subsumed by the employer's stipulation of vicarious liability for the employee's negligence.

The First, Third, and Fifth Circuits have adopted the rule recognized in *Dennis*. *See Elee v. White*, 19-1633, pp. 2-3 (La. App. 1st Cir. 7/24/20), --- So.3d ---, ---, 2020 WL 4251974, at *4-5; *Brandon v. Richard*, 20-0738, p. 1 (La. App. 1 Cir. 10/26/20), 2020 WL 6275825, *1, *writ denied*, 20-01357 (La. 1/26/21), 309 So.3d 343; *Perro v. Alvarado*, 20-339, p. 8 (La. App. 3 Cir. 9/30/20), 304 So.3d 997, 1001; *Landry v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 19-337, pp. 12-14 (La. App. 5 Cir. 12/30/19), 289 So.3d 177, 185-86, *writ denied sub nom. Landry v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 20-00188 (La. 5/1/20), 295 So.3d 945. The Louisiana Supreme Court recently granted writs in a case presenting this issue. *See Martin v. Thomas*, 54,009 (La. App. 2 Cir. 8/11/21), 326 So.3d 334, *reh'g denied* (9/16/21), *writ granted*, 21-01490 (La. 12/21/21), 328 So.3d 1164.

[9] In *Harrington*, this Court held an employer liable under both negligent hiring and vicarious liability claims for an employee's rape of a student. We need not and do not decide today whether to adopt the rule recognized in *Dennis*.

reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id.,* 04-0806, p. 1, 876 So.2d at 765-66 (citation omitted).

On motion for summary judgment, the burden of proof remains with the movant. La. C.C.P. art. 966(D)(1). However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. *Id.* If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *Id. See also Schultz v. Guoth,* 10-0343, pp. 6-7 (La. 1/19/11), 57 So.3d 1002, 1006.

When a motion for summary judgment is made and supported as provided in La. C.C.P. art. 967, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in La. C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. *Id.*

Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751).

**Vicarious Liability**

The principle of vicarious liability or respondeat superior is codified in Louisiana Civil Code article 2320, which provides that an employer is liable for the tortious acts of its employees "in the exercise of the functions in which they are employed." La. C.C. art. 2320. The threshold question is whether the employee's conduct was in the course and scope of his employment. The "course of" employment refers to the time and place, while the "scope of" employment refers to being engaged in the functions for which employed. *See Russell v. Noullet*, 98-0816, p. 4 (La. 12/1/98), 721 So.2d 868, 871 (citation omitted). "The inquiry requires the trier of fact to determine whether the employee's tortious conduct was 'so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests.'" *Id.*, 98-0816, pp. 4-5, 721 So.2d at 871 (quoting *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974)).

"The question of whether an employee's tortious conduct was sufficiently employment-related that a court should impose vicarious liability upon the employer is a mixed question of fact and law." *Id.,* 98-0816, p. 5, 721 So.2d at 871. In *LeBrane*, the Louisiana Supreme Court identified four factors to be considered in determining vicarious liability: (1) whether the tortious act was primarily employment rooted; (2) whether the tortious act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. 292 So.2d at 218. "It is not necessary that all four factors be met in order to find liability; each case must be decided on its specific facts." *Bates v. Caruso*, 03-2150, p. 5 (La. App. 4 Cir. 7/28/04), 881 So.2d 758, 762 (citation omitted).

Generally, an employee's conduct is within the course and scope of his employment if "the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Orgeron v. McDonald*, 93-1353, p. 4 (La. 7/5/94), 639 So.2d 224, 226-27. To determine whether an accident may be associated with the employer's business enterprise, it must be determined whether "considering the authority given to the employee, the employee's tortious conduct was reasonably foreseeable." *Ermert v. Hartford Ins. Co.*, 559 So.2d 467, 476 (La. 1990). One must consider whether the accident was part of the inevitable toll of a lawful enterprise. *Id.* That the predominant motive of the employee is to benefit himself does not prevent the employee's conduct from falling within the scope of his employment. *Id.*, 559 So.2d at 477. If the purpose of serving the employer's business actuates the employee to any appreciable extent, the employer is subject to liability. *Id.*

In contrast to negligence cases, in which the focus is on the employee's general activities at the time of the accident, in intentional tort cases the court must determine "whether the tortious act itself was within the scope of the servant's employment." *Id.*, 559 So.2d at 478. Importantly, however, "the fact that an act is forbidden or is done in a forbidden manner does not remove that act from the scope of employment." *Id.*, 559 So.2d at 479. "The scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks." *Id.*, 559 So.2d at 477.

Louisiana courts have focused on abuse of authority in determining vicarious liability for employees in positions of trust and authority. In *Latullas v. State*, 94-2049 (La. App. 1 Cir. 6/23/95), 658 So.2d 800, the Louisiana First

Circuit Court of Appeal held the State of Louisiana liable for a prison guard's rape of a prisoner on prison grounds while the guard was in charge of a prisoner work crew. The court reasoned that the guard was able to separate the plaintiff from others and commit the rape because of the authority bestowed upon him by his employer. 94-2049, p. 8, 658 So.2d at 804. The court acknowledged that the rape was "totally unauthorized ... and motivated by ... personal desires." *Id.* The court nevertheless found vicarious liability because the rape occurred while the guard was "acting for his employer in the control and supervision of inmates, and it was through these duties that this opportunity arose." 94-2049, p. 8, 658 So.2d at 804-05.

In *Turner v. State*, 494 So.2d 1292 (La. App. 2d Cir. 1986), a recruiting officer for the Louisiana National Guard induced four women to believe that he had the authority to conduct physical exams, during which he touched them inappropriately, while interviewing them for induction into the National Guard. *Id.* at 1296. The court found the State vicariously liable for the recruiting officer's acts because the incident was made possible by the apparent authority of the position the officer held with his employer. *Id.*

In *Dismuke v. Quaynor*, 637 So.2d 555 (La. App. 2d Cir. 1994), the court affirmed the finding that Grambling University was vicariously liable for a rape committed by one of its employees acting as a camp counselor. 637 So.2d at 562. In doing so, the Court noted that though the employee was "technically off duty," the employee used and abused the supervisory authority conferred on him by the university to get in close proximity with the victim and observe her until she was alone. *Id.* at 561-62.

In *Harrington*, the director of a college culinary arts program took a female student to a wine tasting event. The student had volunteered to help with an upcoming wine tasting class for which she was expected to attend wine events and gather information for the course. *Id.*, 97-1670, pp. 2-3, 714 So.2d at 848. After the wine tasting event, the director invited the student to accompany him to business appointments he had at hotels and restaurants that night. The student accepted the invitation in order to make contacts in the hotel/restaurant industry. *Id.*, 97-1670, p. 3, 714 So.2d at 848. After attending the appointments, the director drove to the house of a friend who owned a restaurant. The friend was not at home. When the director and the student returned to the car in the driveway, the director raped the student. *Id.*, 97-1670, pp. 3, 5-6, 714 So.2d at 848-49.

After a bench trial the district court found that the director was not in the course and scope of his employment and the State was not vicariously liable. *Id.*, 97-1670, p. 2, 714 So.2d at 847. This Court reversed. The Court found that the director's position *vis-à-vis* the student was instrumental in the assault committed by the director, that "[t]he director abused his position of authority when he raped [the student]," and that "[c]onsidering the authority given to [the director], his tortious conduct was reasonably foreseeable." *Id.*, 97-1670, p. 13, 714 So.2d at 852.

The evidence presented in the case *sub judice* established that Kimberly took N.C. on weekend outings during the school year, including taking N.C. mini-golfing, to the zoo, and to the park. Kimberly stated he took N.C. on these excursions because N.C. "made the honor roll for the first time, had been selected as 'Terrific Kid,' and student of the month, as well as meeting all of his goals." J.C. testified that when she picked N.C. up from school one afternoon, he told her

15

that Kimberly had taken him to eat breakfast at IHOP that morning. She testified that she did not report the incident because she "trusted the school [and] trusted this teacher with [her] child."

N.C. told his therapist about disturbing behavior by Kimberly that occurred during the school year. According to N.C.'s therapy notes, Kimberly "kissed [him] on the head one time, …asked him a couple of times to wear diapers…[once] while they were having lunch at school and once while in the park," and "volunteered to change the diapers of the students at school."

J.C. testified that after the move to Tennessee, she discovered several recent emails from Kimberly on N.C.'s tablet that contained pictures of "training pull-ups, potty seats that had been used and not clean, guys at bars, bottles." N.C. told his therapist that "Mr. Kimberly sent him pictures of soiled diapers to the email he set up for him" and "offered to travel to [Tennessee], obtain a hotel room and have [N.C.] stay with him."

We find that the evidence in this case is sufficient to support the claim of vicarious liability being presented to a fact finder. Thus, we conclude that the district court erred when it granted summary judgment and dismissed all of J.C.'s claims against the School Board.[10]

**CONCLUSION**

For the reasons assigned, we reverse the judgment of the district court granting summary judgment in favor of the School Board and dismissing all J.C.'s claims against the School Board, and remand the matter to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

---

[10] Given our disposition, we do not reach J.C.'s appeal of the denial of her motion for new trial.