752 So.2d 815 (2000)
Richard BRASSEAUX, et ux.
v.
The TOWN OF MAMOU, et al.
No. 99-C-1584.
Supreme Court of Louisiana.
January 19, 2000.
*816 Lisa Eve Mayer, John Fayne Wilkes, III, Borne, Wilkes, Gibson & Dill, Lafayette, Counsel for Applicant.
Jeffrey Michael Bassett, William Tracy Barstow, Morrow, Morrow, Ryan & Bassett, Opelousas; Jacque Berchmans Pucheu, Jr., Anthony Craig Dupre, Pucheu, Pucheu & Robinson, Eunice, Counsel for Respondent.
TRAYLOR, Justice.[*]
Plaintiff, the owner of a bar in St. Landry Parish, was the victim of an early morning attack in the parking lot of his establishment by an assailant wielding a pool stick. At the time of the attack, plaintiff was responding to another altercation wherein the assailant was beating a bar patron. Upon arriving at the scene of that disturbance, plaintiff fell victim to the assailant. At some point during the course of the assault on plaintiff, the assailant's companion, an off-duty dispatcher with the Town of Mamou Police Department ("Town") in Evangeline Parish, displayed a badge and identified himself to bystanders as a police officer to quell the disturbance and leave the scene. However, plaintiff was immediately thereafter struck again and sustained severe head injuries as a result.
The trial court found that the Town was liable for the injuries sustained by plaintiff on the basis of vicarious liability, and the court of appeal affirmed. We granted writs in this matter to determine the liability of the Town vel non, for the injuries sustained by plaintiff, solely on the basis of the off-duty dispatcher's representation that he was a police officer during the attack on plaintiff, which occurred outside the territorial jurisdiction of the Town of Mamou, in another parish. For the reasons that follow, we reverse.

FACTS AND PROCEDURAL HISTORY
On the evening of March 4, 1995, defendants herein, Shannon Bordelon and Keith Lavergne, began an evening of "bar hopping," visiting several drinking establishments in the Evangeline Parish area. In the early morning hours of March 5, 1995, the two men drove into nearby St. Landry Parish and stopped at the Four Aces Lounge ("Four Aces") near Eunice, which, at all times relevant herein was owned and operated by plaintiff, Richard Brasseaux.
Bordelon and Lavergne arrived at the Four Aces shortly before 2:00 a.m. and continued their drinking pursuit. While there, Bordelon engaged in a game of pool with another patron, George Stelly. During the course of the game, an argument arose between Stelly and Bordelon. In an attempt to avoid a confrontation with the belligerent Bordelon, Stelly and his girlfriend, Flo Johnson, exited the Four Aces. However, Bordelon, armed with a pool stick, pursued Stelly into the parking lot. Using the pool stick as a truncheon, Bordelon administered several blows to the unarmed Stelly, while Johnson cried out for help. Inside, plaintiff was bartending. Responding to the call for help, plaintiff retrieved his "nightstick," a modified ax handle, from behind the bar and proceeded into the parking lot.
*817 According to the findings of fact made by the trial court, plaintiff, upon exiting the bar, observed the injured Stelly.[1] While plaintiff was assessing the situation, Bordelon approached him from behind and struck him on the neck with the pool stick, sending plaintiff to his knees. Immediately thereafter, Lavergne, who had exited the Four Aces at approximately the same time as plaintiff, displayed a badge to the several bystanders and stated that he was a police officer with the Town of Mamou. Apparently, Lavergne intended to halt the attack and keep the crowd at a distance. At least one bystander and, possibly, plaintiff questioned Lavergne's authority, inasmuch as Lavergne was outside the territorial jurisdiction of the Town of Mamou and indeed, outside Evangeline Parish. As Lavergne was representing himself as a police officer and while plaintiff was still disabled from the initial blow, Bordelon struck plaintiff on the head, rendering him unconscious and causing serious head injuries.[2] Lavergne then kicked plaintiff in the side, causing minimal injury. Thereafter, Bordelon and Lavergne fled the scene.
Plaintiffs, Richard Brasseaux and his wife, Cheryl Brasseaux, filed the instant suit against the Town of Mamou, Keith Lavergne, and Shannon Bordelon.[3] A bench trial began on February 25, 1997, and continued for several days over the course of nearly three months, ultimately concluding on May 12, 1997.
At trial, the evidence revealed that Lavergne was hired by the newly elected chief of police of the Town of Mamou in January 1995, as a part-time dispatcher with the police department. Essentially, his job duties were to receive calls from citizens and to relay information to police units on patrol. In addition to his duties as a dispatcher, Lavergne had aspirations of becoming a police officer, which he communicated to the chief of police, Gregory Dupuis. Chief Dupuis informed Lavergne that he had no openings for a patrolman at that time, but that Lavergne could voluntarily and without pay, ride with police officers on duty as an informal training measure. Should a police officer position become available, according to Chief Dupuis, Lavergne's chances of securing the job would be more favorable. However, the Chief did not know when a position would become vacant, and he could not offer assurances that Lavergne would be offered the job if a vacancy arose.
Notwithstanding the uncertainty of becoming a police officer with the Town, Lavergne participated in the "ride along" with on-duty officers. The testimony of *818 Chief Dupuis reflected that on one occasion, Lavergne asked his advice as to the caliber of weapon that police officers are required to carry. During that discussion, Lavergne indicated that he was thinking of purchasing a .380 caliber semi-automatic pistol. Chief Dupuis informed him that a.380 caliber was not the weapon of preference, but that most police officers, including himself, carry a 9-millimeter side arm or one with a larger caliber. Lavergne later purchased a 9-millimeter pistol with personal funds. However, he was not authorized to carry a weapon while riding with police officers during the informal training sessions.
On another occasion during the 1995 Mardi Gras celebration in Mamou, Lavergne was issued a uniform and duty belt, and allowed to patrol the Town on foot for purposes of crowd control.[4] As Chief Dupuis testified, during Mardi Gras he uses every available person at his disposal to maintain the peace because of the overwhelming number of people who gather in Mamou during the celebration. On that one day, while on patrol, Lavergne participated in the arrest of an individual.
The evidence also disclosed that Lavergne, while riding with another officer, participated in the arrest of his brother. Chief Dupuis testified that Lavergne was not authorized to effect arrests of individuals while in the "ride along" training program. Upon learning of the incident, Chief Dupuis reprimanded the police officer with whom Lavergne was training. Additionally, during the course of a motor vehicle accident investigation within the Town, Lavergne signed and completed portions of the accident report under the supervision of the training officer. Felicia Danielson, another dispatcher with the Mamou Police Department, testified that, except for Lavergne, no other dispatcher had a badge, effected arrests, or patrolled the Town with police officers. However, it was also revealed that no other dispatcher expressed an interest in participating in the "ride along" training. Chief Dupuis was surprised to learn during the trial of this matter that on a prior occasion, Lavergne was allowed to patrol the Town in a police vehicle while armed. In his testimony, Chief Dupuis made it clear that, had he been aware that Lavergne was patrolling alone, he would have neither authorized, nor allowed it because he was not a police officer.
Chief Dupuis testified that if Lavergne had been hired as a police officer, he would have begun full-time, paid training immediately, and he would have been issued a firearm and a commission card. Under those circumstances, Lavergne would have been on patrol within three to four weeks. Additionally, Lavergne would have been placed in an accredited police academy for formal training as soon as practicable, as required by law.[5] Lavergne's employment records were introduced at trial. From the date of his hire with the police department, Lavergne was classified as a part-time dispatcher and paid as such, except for the one occasion previously mentioned, during which he patrolled the Town during Mardi Gras. It is undisputed that, at the time of the attack, Lavergne was not on duty with the Town of Mamou. It is further incontestable that the attack on plaintiff occurred outside the geographical boundary of the Town of Mamou.
*819 Eyewitness accounts of the attack on plaintiff, Brasseaux, vary dramatically and are laden with inconsistencies. Surprisingly, the first victim of Bordelon's parking lot rage, George Stelly, recalled nothing of being pummeled by Bordelon or of the battery committed against plaintiff. However, his girlfriend, Flo Johnson, testified that she witnessed the attack from the parking lot. According to her testimony, plaintiff and Bordelon stood side by side and engaged in a brief conversation before Bordelon struck plaintiff with the pool stick. Then, Lavergne, after announcing that he was a police officer, took the ax handle from Brasseaux's hand and struck two blows to his head. On cross-examination, she admitted that she did not initially report the use of the ax handle on plaintiff. Additionally, Johnson related that she had consumed approximately six beers during the evening prior to the attack. She slightly modified her testimony during cross-examination, however, and conceded that she had imbibed approximately 11 to 12 draft beers during the thirteen hour period during which she was present at the Four Aces.
James Aucoin was present at the Four Aces during the attack on plaintiff. He testified that he did not observe Stelly being beaten by Bordelon. According to his version of events, Bordelon came from behind and struck plaintiff on the back of the neck with the pool stick. At one point during his testimony, Aucoin testified that at the time plaintiff exited the bar, Lavergne was displaying the badge to plaintiff. Later, Aucoin testified that Lavergne came out of the Four Aces after plaintiff, and that the initial strike by Bordelon, which buckled plaintiff's knees, was delivered before Lavergne displayed the badge. According to Aucoin, Lavergne struck plaintiff once with the ax handle, which he picked up after plaintiff dropped it. Notably, he stated that Flo Johnson was visibly intoxicated and inside the lounge, rather than in the parking lot as she testified, when plaintiff exited with the ax handle.
The trial judge concluded that the testimony of Lavergne, and that of Bordelon, who claimed to be acting in self-defense, was unworthy of belief. In contrast, the testimony of Johnson and Aucoin, according to the trial judge, was much more credible than the self-serving testimony of Bordelon and Lavergne. Although not without apparent contradictions and internal inconsistencies, the testimony of Johnson and Aucoin was uniform in one respect: plaintiff was struck by Bordelon and immobilized before Lavergne showed the badge and announced that he was a police officer.
With respect to liability, the trial judge found all three defendants at fault and apportioned liability as follows: fifty percent to Bordelon and fifty percent to Lavergne and the Town of Mamou. Plaintiff was not assigned any liability. While Lavergne's employee classification was not that of a police officer and he was not paid as such, the trial judge placed a great deal of emphasis on the police-type functions he was allowed to perform. Accordingly, the court found that Lavergne was a "de facto" police officer with the Town. The judge reasoned that, by displaying the badge and representing himself as a police officer with the Town of Mamou, Lavergne was performing the duties of a police officer on behalf of the Town at the time of the attack.
As a de facto police officer, according to the trial court, Lavergne was under a legal obligation to protect plaintiff, once the decision was made to display the badge and represent himself as a police officer. When he failed to prevent the second, critical blow to plaintiff, Lavergne breached the duty owed and was thereby negligent.[6] With Lavergne's fault established, *820 the trial judge then determined that, under the principles articulated by this Court in LeBrane v. Lewis, 292 So.2d 216 (La. 1974), Lavergne was in the course and scope of his employment with the Town at the time he breached the foregoing duty. Consequently, Lavergne's negligence was imputed to the Town by virtue of the doctrine of respondeat superior. LA. CIV. CODE ANN. art. 2320.
On original review, the court of appeal affirmed the trial court judgment. Brasseaux v. Town of Mamou, 97-1540 (La. App. 3 Cir. 5/20/98), 713 So.2d 742. Thereafter, we granted writs and remanded to the court of appeal for further consideration in light of this court's recent pronouncement in Russell v. Noullet, 98-0816 (La.12/1/98), 721 So.2d 868, in which we reexamined the principles of vicarious liability vis a vis injuries caused by the delictual conduct of peace officers. Brasseaux v. Town of Mamou, 98-1647 (La.2/5/99), 737 So.2d 733. On remand, the court of appeal found no enlightenment in Russell and reasserted its prior ruling. 97-1540 (La.App. 3 Cir. 5/5/99), 736 So.2d 288. Having granted the instant writ application, we proceed to review the propriety of assessing liability to the Town of Mamou under these particular factual circumstances.

LAW AND DISCUSSION
Plaintiffs advance the theory of vicarious liability under the provisions of LA. CIV. CODE ANN. art. 2320, to establish liability on the part of the Town of Mamou.
Generally referenced as the doctrine of respondeat superior, the body of Louisiana law related to the imposition of liability on the master for the delicts of the servant is codified in LA. CIV.CODE ANN. art. 2320. Therein, it is stated: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." Although an employment relationship may in fact exist, the employer will not be liable for the substandard conduct of the employee unless the latter can be fairly said to be within the course and scope of the employment with the former. Russell v. Noullet, 98-0816 (La.12/1/98), 721 So.2d 868; Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994.
In LeBrane v. Lewis, 292 So.2d 216 (La.1974), we set forth the requisite considerations for determining whether the tortious conduct of the employee may be properly imputed to the employer. There, we stated that the employer's liability is predicated on whether the tortious conduct of the employee is "so closely connected in time, place, and causation to his employment-related duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interests." Id. at 218. Because of the unlimited contexts in which the issue may arise, we have stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. Orgeron on Behalf of Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224, 226-227, citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 70 (5th ed.1984).
As a mixed question of fact and law, the determination by the trial court as to whether an employee's conduct was sufficiently employment-related, such that it may be imputed to the employer, should be accorded great deference by a reviewing court under the manifest error standard *821 of review. Ermert v. Hartford Ins. Co., 559 So.2d 467, 478 (La.1990); Baumeister, 673 So.2d at 998. Upon review, an appellate tribunal may reverse a lower court's factual findings only when (1) the record reflects that a reasonable factual basis does not exist for the finding of the trial court, and (2) the record reflects that the finding is clearly wrong. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). However, we are cognizant of the fact that we must do more than merely review the record for some evidence that supports the lower court's finding. Id. Rather, we are obligated to review the entire record before us and determine whether it contains sufficient evidence from which a rational trier of fact could conclude that the conduct complained of was employment-related. Stobart, 617 So.2d at 882; Russell, 721 So.2d at 871. With the foregoing legal standards in mind, we examine the correctness of the trial court's findings.
The trial judge found that Lavergne was a de facto police officer with the Town. However, we need not address that particular finding at this time, for whether his classification is that of a part-time dispatcher or a police officer, it is certain that Lavergne was an employee of the Town of Mamou Police Department. Under LA. CIV.CODE ANN. art. 2320, an employer is subject to vicarious liability for the tortious conduct of his employee, irrespective of his title, while acting within the course and scope of employment. Accordingly, we will consider the nature and character of Lavergne's conduct in light of the nature and character of the duties that he was authorized to perform, as well as the time, place, and motive for performance of those duties. Orgeron, 639 So.2d at 227.
Lavergne was hired as a part-time dispatcher. However, we recognize that Lavergne's exercise of police duties on a limited basis prior to the incident under consideration is the basis for the finding of vicarious liability on the Town for Lavergne's conduct during the attack on plaintiff. It is uncontested that Lavergne's performance of duties as a part-time dispatcher, for which he was hired and paid, did not cause or contribute to the injuries sustained by Brasseaux. Therefore, we will focus on the police-type duties he was allowed to perform as an employee of the Town. In that respect, it will be instructive to examine the jurisprudence pertaining to off-duty police conduct as a basis for imposing vicarious liability.
We recently revisited the vicarious liability of a municipality for the delictual acts committed by a police officer in Russell v. Noullet, 98-0816 (La.12/1/98), 721 So.2d 868. There, an off-duty New Orleans police officer, Charles Noullet, and his two brothers were enjoying a day at the lakefront. Officer Noullet and his brothers had consumed several alcoholic beverages during the course of the outing. At some point, one of the brothers participated in a fistfight with several individuals in a nearby group. Responding, Officer Noullet identified himself as a police officer to the group, which allowed his brother, who was a police officer recruit, to momentarily break free from the melee and fire warning shots into the air with his authorized service pistol. The group retreated sufficiently for Noullet's brother to make his way to his vehicle and leave the scene. Officer Noullet also attempted to leave the scene, but as he approached his vehicle, he observed a female bystander attempting to write down his license plate number. She indicated to Officer Noullet that she intended to report him to the police. In response, Officer Noullet grabbed her by the throat and violently slammed her into the back of his vehicle, informing her that "he was the police." The nearby group of individuals, seeing the attack on the woman, confronted Noullet as he was attempting to drive away. Some of the individuals attempted to pull Noullet from his vehicle, at which time Noullet drew his service weapon and fired into the crowd, injuring a bystander. Both individuals injured in the altercation filed *822 actions against Officer Noullet and his employer, the City of New Orleans, for their respective injuries.
In Russell, we applied the LeBrane factors to Officer Noullet's conduct and concluded that he was not within the course and scope of his employment as a police officer with the City at the time of the altercation. In determining, as we did, that the City was not vicariously liable for Officer Noullet's actions, we specifically noted that his conduct did not occur during regular working hours, or at his regular place of employment, or while he was in uniform. Russell, 721 So.2d at 872. Furthermore, we observed that Officer Noullet was carrying his authorized weapon on his person while consuming alcohol, which was a violation of police department regulations. Officer Noullet's assault of the female bystander and the shooting into the crowd were both found to be motivated by purely personal pursuits, rather than the exercise of police authority.
We previously held that a sheriff was not vicariously liable for injuries sustained when an off-duty deputy accidentally discharged his weapon, striking the plaintiff, while the deputy was engaged in horseplay. Roberts v. Benoit, 605 So.2d 1032 (La.1991), on rehearing. There, the deputy, Benoit, was initially employed as a cook with the Orleans Parish Sheriff's Office. Thereafter, the sheriff commissioned all kitchen workers, including Benoit, as deputy sheriffs so that they could receive supplemental pay. Benoit was not issued the weapon by his employer; rather, he purchased the weapon that injured plaintiff. However, there was no requirement that he carry a weapon. Prior to the accident, Benoit and his companion were visiting at plaintiffs home for the purpose of repairing Benoit's car. During the course of their visit, Benoit, who was intoxicated, began carelessly manipulating his weapon, which discharged and injured the plaintiff.
We reversed the finding of vicarious liability on the part of the sheriff, finding that Benoit was not exercising any function for which he was employed by the sheriffs office. Applying the LeBrane test to his conduct, this court determined that Benoit was outside the course and scope of his employment. There was no connection between his conduct and the furtherance of the sheriffs business. The shooting occurred after Benoit's working hours had ended and at a location far removed from the sheriff's kitchen. Additionally, "the `causation' or motive for Benoit's presence at the plaintiffs home was purely personal and unrelated to his employment duties; he was attempting to have his car repaired." Roberts, 605 So.2d at 1041. Under those circumstances, we found that Benoit was not actuated by any intent to further the functions of the sheriffs office.
In the matter sub judice, the trial court found that Lavergne was acting within the course and scope of his employment with the Town of Mamou at the time of plaintiffs injury, thereby justifying the imposition of vicarious liability. We disagree.
Initially, we note that in his reasons for judgment, the trial judge specifically found that two of the factors enunciated in LeBrane, namely the "time" and "place" requirements, were not satisfied. "There is no question that the employee's (Lavergne's) conduct did not occur during working hours and did not occur on the employer's premises." The court found, however, that Lavergne's conduct was primarily employment rooted and reasonably incidental to his duties with the Town of Mamou. Having reviewed the record in its entirety in light of LeBrane, we conclude that Lavergne was engaged in a purely personal pursuit, unrelated to his employment with the Town of Mamou, at the time of the subject incident.
As a dispatcher, Lavergne was simply required to answer the telephone and communicate with officers on patrol by two-way radio. His duties as a dispatcher required him to remain in the police station in Mamou at all times. With the *823 one exception of allowing him to patrol the Town on foot during Mardi Gras, Lavergne was never authorized or permitted by Chief Dupuis to assume any police duties in the absence of an on-duty training officer, with whom Lavergne participated in a "ride along." The instance wherein Lavergne patrolled the Town alone in a police vehicle was clearly unauthorized and outside the scope of his training, as Chief Dupuis explained during trial. Furthermore, save the one day Mardi Gras patrol, Lavergne was paid solely on the basis of his duties as a part-time dispatcher. The police-related duties were voluntarily undertaken during his off hours.
At the time he represented himself as a police officer during the attack, Lavergne was merely attempting to extricate himself and Bordelon from a volatile situation brought about by the drunken and belligerent Bordelon. Lavergne testified that he did not intend to arrest anyone, despite the fact that Bordelon was inflicting great bodily harm upon plaintiff. Certainly, Lavergne wanted to stop the beating of plaintiff, but not for the purpose of protecting life and limb or arresting the violent Bordelon; rather, his sole motive for displaying the badge was simply to intercede long enough to flee from the scene and the angry crowd, which he did.
In that respect, it cannot be said that Lavergne's conduct was employment-rooted or reasonably incidental to his employment with the Town of Mamou, as a dispatcher or otherwise. The Town derived no benefit from Lavergne's conduct. Certainly, Lavergne's general conduct during the incident in question, i.e., drinking alcohol in a bar and playing pool, was not beneficial to the Town. Furthermore, Lavergne's specific conduct of representing himself as a police officer, while arguably an aspect of police duty, was done for the purpose of fleeing the scene of an aggravated battery in which he was involved, and evading arrest by the St. Landry Parish authorities. The mere display of the badge and the representation as a police officer, without more, are insufficient to establish employment-rooted conduct. Moreover, the risk that an off-duty municipal employee will go "bar hopping" in another parish and represent to others that he is a police officer in order to aid in the escape of himself and his companion after a felonious assault on an innocent third party, is not a risk fairly attributable to Lavergne's employment with the Town.
Furthermore, the specific lack of the "time" and "place" factors, two of the LeBrane criteria, strongly militates against a finding of vicarious liability. At the time of the attack, Lavergne was clearly off duty and not "on call." He was paid only for hours worked as a part-time dispatcher in Mamou. Moreover, Lavergne was not only outside the municipal boundaries of Mamou, he was entirely outside Evangeline Parish.
In Russell, we found that the City of New Orleans was not vicariously liable for the conduct of Officer Noullet, a commissioned police officer, because the altercation occurred while he was off-duty and away from his regular place of business. We also determined that the attack of the initial victim and the subsequent shooting were not employment-related or reasonably incidental to the performance of his official duties, but were incidents of conduct actuated by personal motivations. In the instant case, Lavergne's conduct likewise arose out of personal considerations alone. Thus, our decision in Russell compels our conclusion that Lavergne's conduct was outside the course and scope of his employment with the Town. Accordingly, we find that the trial judge was manifestly erroneous and clearly wrong in finding vicarious liability on the part of the Town of Mamou.

CONCLUSION
We conclude that plaintiffs' injuries were not the result of vicarious liability on the part of the Town of Mamou. The lower courts' determinations otherwise are in error. Lavergne was not within the *824 course and scope of his employment with the town at the time of plaintiffs' injuries.

DECREE
For the foregoing reasons, we reverse the judgments of the lower courts and dismiss plaintiffs' demands against the Town of Mamou.
REVERSED AND RENDERED.
LEMMON, J., concurs and assigns reasons.
JOHNSON, J., concurs in result.
LEMMON, J., Concurring.
Torts of an off-duty employee never occur during working hours or at the regular place of work. Such torts, therefore, do not meet the first two LeBrane factors and seldom produce vicarious liability. However, a police officer is generally considered to be on duty twenty-four hours per day, while most other municipal employees are truly off-duty when not at time and place of work, and this is the principal reason that municipalities are occasionally held vicariously liable for torts of an off-duty police officer. A police officer is duty-bound to restore and maintain peace in a highly charged situation, whenever and wherever it occurs. Moreover, a police officer generally is issued a badge of authority and a weapon. Because of these factors that are not applicable to other municipal employees, the employing authority may be vicariously liable for the tort when a off-duty police officer who, while out of uniform and away from his or her regular place of employment, announces his or her authority and then performs acts that can reasonably be viewed as action usually undertaken by a police officer, and commits a tort in the course of such conduct. See Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979).[1]
Because of these differences between municipal employees, it is a question of utmost importance whether Lavergne was a police officer or was a municipal employee who was not duty-bound to take appropriate police action whenever and wherever it was necessary to keep the peace.
Here, it is undisputed that Lavergne was employed by the Town as a part-time dispatcher for less than two months, that he was classified and paid as such, and that he was not issued a weapon as was done immediately upon the hiring of police officers. Except on one day when extra patrolmen were hired for a special occasion, he never performed the duties of a patrolman (although he was permitted at times to voluntarily ride along with and observe officers on duty). Moreover, there was no evidence that he was required, by department rules or otherwise, to be on duty twenty-four hours per day to quell disturbances of the peace. At the time of the tort, Lavergne was not exercising any function for which he had been employed by the Town, and there was no connection between his conduct in displaying his badge outside of Mamou and the business of the Mamou Police Department.
I therefore conclude that Lavergne, at the time of the attack, was not a police officer for whose torts the Town would be vicariously liable. The trial court's contrary finding was manifestly erroneous.
NOTES
[*] MARCUS, J. not on panel. Rule IV, Part 2, Section 3.
[1] The trial judge specifically indicated that he believed the testimony of eyewitnesses, Flo Johnson and James Aucoin. Although the testimony of Johnson and Aucoin was riddled with inconsistencies concerning the attack on plaintiff, including prior inconsistent statements by each, the judge assigned more credibility to their testimony than that of other eyewitnesses.
[2] In his lengthy Reasons for Judgment, the trial judge did not make a factual finding that Lavergne struck plaintiff with a dangerous instrumentality, notwithstanding that some witness testimony was elicited to that effect. Moreover, with respect to the involvement of Lavergne in the injuries sustained by plaintiff, the trial judge noted:

Lavergne's fault and liability in this matter manifested itself when he flashed the badge, represented himself as a police officer with the Town of Mamou and kicked the plaintiff, Richard Brasseaux. Though Keith Lavergne's involvement may never be determined with any degree of accuracy due to the numerous inconsistent statements and credibility (or lack thereof) of the people present and/or involved in this incident, it is certain that defendant, Keith Lavergne, was there.
Accordingly, it is clear that the trial court determined that the blows to plaintiff's head, which are the source of the injuries complained of, were not administered by Lavergne.
[3] After plaintiffs filed suit, Tri-Parish Bank intervened, asserting its status as a judgment creditor against plaintiff by virtue of a previous default judgment rendered against him. Tri-Parish was dismissed as a party by a consent decree after the claims alleged in the intervention were compromised after trial.
[4] Lavergne was already in possession of the badge that is the center of this controversy. During trial, he testified that he received the badge from the assistant police chief. However, the trial judge specifically found Lavergne's testimony to be woefully lacking any credibility. The assistant chief, Herman Celestine, testified that he did not recall issuing a badge to Lavergne, but that it was possible that he did. Furthermore, Chief Dupuis testified that it was his understanding from speaking with Lavergne that he acquired the badge from his mother, who was previously employed as a dispatcher with the Town of Mamou Police Department.
[5] LA.REV.STAT. ANN. 40:2405 mandates that all newly hired peace officers must complete a certified training program within one calendar year of hire.
[6] The trial court was specific in its finding that, "Up until the flashing of the badge, there was no negligence or fault on the part of defendant, Keith Lavergne.... Lavergne's fault and liability in this matter manifested itself when he flashed the badge, represented himself as a police officer with the Town of Mamou and kicked the plaintiff, Richard Brasseaux."
[1] However, tortious conduct of an off-duty police officer frequently does not produce vicarious liability. See, e.g., Roberts v. Benoit, 605 So.2d 1032 (La.1991); Russell v. Noullet, 98-0816 (La.12/1/98), 721 So.2d 868. The City may well have been vicariously liable for Officer Noullet's off-duty action if he had committed a tort as part of a continuous course of conduct after announcing he was a police officer in attempting to quiet a disturbance.