Judge MICHAEL E. KIRBY.
_JjNew Orleans Police Officer Ashley Terry requests a review of the September 22, 2008 decision of the Civil Service Commission which summarily dismissed her appeal on the ground that she had no legal right to appeal the ruling of the Appointing Authority, the City of New Orleans Department of Police, as she had not completed the requisite one-year probationary period. We affirm.
Officer Terry was employed by the City of New Orleans Department of Public Works as a parking control officer from April 29, 2007 through June 16, 2007. During that time, she was accepted by the city as a “police recruit” and began training at the Police Academy to become a police officer. After completing the training, Officer Terry was promoted to Police Officer I status on April 2, 2008. Three months later, on July 15, 2008, Officer Terry improperly displayed her firearm in public while off duty. Following an investigation and disciplinary hearing, the N.O.P.D. notified Officer Terry by letter dated July 24, 2008, that she was terminated.
12Officer Terry timely appealed her termination to the Civil Service Commission. The Appointing Authority filed a motion for summary disposition, arguing that Officer Terry was a probationary employee and, therefore, had no right to appeal her termination. In support of its motion, the Appointing Authority submitted Officer Terry’s civil service employment record indicating her employment status as probationary for a period beginning April 2, 2008 and ending April 1, 2009. The Civil Service Commission granted the Appointing Authority’s motion and dismissed the appeal.
On appeal, Officer Terry argues that the Civil Service Commission erred in determining she had no right to appeal her termination. She contends that her time of service as a police recruit and a parking control officer should be cumulated and credited toward tenured status. Officer Terry maintains that she became a regular employee with permanent status in the civil service upon her promotion to Police Officer I in April 2008.
Except in cases of alleged discrimination, the burden of proof on appeal, as to the facts, shall be on the Appointing Authority under Civil Service Rule II, § 4.4 and § 4.8. In a civil service case, the appellate court’s review of the findings of fact is governed by the manifest error or clearly erroneous standard. Goins v. Department of Police, 570 So.2d 93 (La.App. 4 Cir. 10/30/90). “Where the [Civil Service] Commission’s decisions involve jurisdiction, procedure, and interpretation of laws and regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard.” Walton v. French Market Corporation, 94-2457 (La.App. 4 Cir. 4/26/95), 654 So.2d 885, 887. On legal issues, the appellate court gives no special weight to the findings of the Civil Service Commission, but exercises its constitutional duty to review questions of law and renders judgment on the record. Christoffer v. New Orleans Fire Dept. 99-2658 (La.App. 4 Cir. 3/29/00), 757 So.2d 863, writ denied 2000-1413 (La.6/30/00), 766 So.2d 543. A mixed ques *976 tion of fact and law should be accorded great deference by the reviewing court under the manifest error standard of review. Brasseaux v. Town of Mamou, 99-1584, pp. 7-8 (La.1/19/00), 752 So.2d 815, 820-821.
“Except when there is an allegation of discrimination under Civil Service Rule II, § 4.6, there is no provision for appeal by a probationary employee.” Walton, 94-2457, 654 So.2d at 887. In the present case, Officer Terry did not allege any form of discrimination in her challenge to her termination. Unless Officer Terry is considered a permanent employee, she has no right to appeal her dismissal. See id. “The question whether an employee has the right to appeal is analogous to the question whether a plaintiff has a cause of action.” Id.
Officer Terry contends that she obtained regular employee status because she had completed more than one year in the service of the city given her time as a police recruit and parking control officer. She maintains that her one-year working test period began to run when she became a police recruit in April 2007.
In Banks v. New Orleans Police Department, 2001-0859, 2001-1302, p. 3 (La.App. 4 Cir. 9/25/02), 829 So.2d 511, 513 this Court en banc considered the issue of whether Banks, who was classified as a Police Officer I, had the right to appeal disciplinary action considering he had completed one year of training as a [4police recruit at the Police Academy. The Court emphasized that “[t]he right of appeal is determined by [the officer’s] employment status.” Id.
A “regular” employee is distinguished from a “probational” employee based on whether the working test period is completed. Mariani v. Police Dept., 96-0871 (La.App. 4 Cir. 12/27/96), 686 So.2d 1012, 1014, writ denied, 97-0276 (La.3/14/97), 689 So.2d 1389. In that case, in finding that several police recruits had no right to appeal their terminations, this Court discussed the probationary period of a police recruit but did not reach a discussion about the probationary or working test period of an employee who had completed police recruit training and was promoted to Police Officer I status.
Under “Definitions” in Civil Service Rule I, § 1(61) provides:
“Regular Employee”: an employee who has been appointed to a position in the classified service in accordance with the Law and these Rules and who has completed the working test period. [Emphasis added.]
Civil Service Rule I, § 1(77) provides:
“Working Test Period Employee”: an employee who has been appointed to a position from an employment list, but who has not completed the working test period. The terms “probation period” and “probational employee” shall be considered identical with “working test period” and “working test employee”.
La. R.S. 33:2393 also provides definitions. La. R.S. 33:2393(27) provides:
27. “Regular employee” means an employee who has been appointed to a position in the classified service in accordance with this Part after completing his working test period. [Emphasis added.]
La. R.S. 33:2417 provides, in pertinent part:
§ 2417. Working tests
Every person appointed to a position in the classified service ... shall be tested by a working test while | .^occupying the position. The period of the working test shall commence immediately upon appointment and shall continue for the time, not less than *977 six months nor more than one year, established by the director subject to the rules. At the times during the working test period and in the manner which the director requires, the appointing authority shall report to the director his observation of the employee’s work, and his judgment as to the employee’s willingness and ability to perform his duties satisfactorily, and as to his habits and dependability. At any time during his working test period, after the first two months thereof, the appointing authority may remove an employee if, in the opinion of the appointing authority, the working test indicates that (1) the employee is unable or unwilling to perform his duties satisfactorily or (2) his habits and dependability do not merit his continuance in the service. Upon the removal, the appointing authority shall forthwith report to the director and to the employee removed his action [sic] and the reason therefor.... The appointing authority may remove an employee within the first two months of his working test period only with the approval of the director. The director may remove an employee during his working test period if he finds, after giving him notice and an opportunity to be heard, that the employee was appointed as a result of fraud or error. [Emphasis added.]
Ten days prior to the expiration of an employee’s working test period, the appointing authority shall notify the director in writing whether the services of the employee have been satisfactory and whether he will continue the employee in his position. A copy of the notice shall be given to the employee ten days prior to the expiration of his working test period. Upon approval by the director of a favorable report, the appointment of the employee shall be complete at the expiration of the working test period. Failure by an appointing authority to give the ten days’ notice to the director and a copy thereof to the employee shall have the same force and effect as a satisfactory report.
⅜ ⅜ ‡
See also Civil Service Rule VII, § 1.1.
La. R.S. 33:2424 provides, in pertinent part:
Any regular employee in the classified service, subject to the provisions of this Part, or the rules made pursuant thereto, who deems that he has been removed, dismissed, | ^retired, reduced in pay, demoted, subjected to a second suspension of sixty days or less without pay, or subjected to any other disciplinary action set out in R.S. 33:2423, without just cause, may, within sixty days of the action demand a hearing to determine the reasonableness of the action ....
[[Image here]]
The foregoing provisions of this Section shall not apply to temporary appointments as defined in R.S. 33:2419, and employees during their working test period as provided for in R.S. 33:2417. [Emphasis added.]
Only regular employees in the classified service have the right to appeal disciplinary actions to the Commission. Civil Service Rule II, § 4.1. Article X, § 8 of the Louisiana Constitution provides, in part:
No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part.
Article X, § 8 only refers to employees who have obtained permanent classified *978 status. The employee, who has not gained permanent status, is not entitled to review of the Appointing Authority’s disciplinary action.
The one-year working test period for the classification of Police Officer I is the period when the Appointing Authority can observe a police officer’s on-the-job performance of his duties or work in the field. Banks, 2001-0859, 2001-1302, p. 6, 829 So.2d at 516. “The working test period does not take place until the police officer is working on the job rather than when he is a recruit at the Police Academy.” Id.
In this case, Officer Terry’s working test period or probationary period commenced upon her promotion to the class of Police Officer I on April 2, 2008. 17Officer Terry would have become a regular employee with permanent status only upon her completion of the one-year working test period, which would have been on April 1, 2009, had she not been discharged.
Officer Terry maintains that the city civil service record designated her as both “permanent” and “probationary” upon her appointment to “police recruit” status, implying that she would become a regular employee when she completed her training period. Also, unlike in Banks, she contends, the Appointing Authority’s civil service announcement, which she received as a newly appointed police recruit, never notified her that a working test period begins only upon the recruit’s promotion to the class of Police Officer I. Because the Appointing Authority failed to notify her of the working test period, Officer Terry argues that she should have been classified as regular employee upon her promotion to Police Officer I. Alternatively, Officer Terry cites Civil Service Rule VII, § 1(1.2)[1], arguing that the working test period for a police recruit was six (6) months, which she had completed before being promoted to the class of Police Officer I.
We find no merit to the foregoing claims. A police recruit, by definition, is not a working police officer but rather a probationary employee in training. See Mariani, 96-0871, 686 So.2d 1012, 1014. That the city designated Officer Terry, while a police recruit, as “permanent” as opposed to “temporary” for payroll purposes (which is the case here) is of no consequence. She remained a probationary employee. Also, the civil service announcement for the position of [ ^police recruit clearly states that “[ujpon completion of all phases of police recruit training, candidates will be promoted to the class of Police Officer I and will serve a one (1) year probationary period in that class.”[2] That the announcement gives no “working test period” for a police recruit per se, is irrelevant, because a police recruit is not a classified employee working on the job but rather a probationary employee in training. See Banks, 2001-0859, 2001-1302, p. 6, 829 So.2d at 516.
Finally, we find no merit to Officer Terry’s argument that her service as a parking control officer should be credited toward her “working test period” for the purpose of determining whether she achieved “regular employee” status as a Police Officer I. The civil service announcement for parking control officer states that “[tjhis position requires a one (1) year probationary period.”[3] Officer *979 Terry did not complete the one-year probationary period as a parking control officer; she worked only 49 days in that capacity. Furthermore, the civil service job descriptions for Police Officer I and Parking Control Officer are distinct positions requiring different duties.
The record in this case demonstrates that Officer Terry never completed the one-year working test period required of a Police Officer I to gain permanent regular employee status in the civil service. Therefore, she was not entitled to appeal her termination by the Appointing Authority to the Civil Service Commission. See Civil Service Rule II, § 4.1.
| (Accordingly, for the reasons stated herein, the ruling of the Civil Service Commission dismissing Officer Terry’s appeal is affirmed.
AFFIRMED.

.Civil Sen/ice Rule VII, § 1(1.2) provides: “If the duration of the working test period is not stated at the time of the announcement of the test for a class of positions, the working test period shall be six (6) months in duration.”

. Appellant Exhibit A in the record.

. Appellant Exhibit F in the record.